NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| TRUCKING EMPLOYEES OF NORTH JERSEY WELFARE FUND, INC. – PENSION FUND,<br><br>            Plaintiff,<br><br>      v.<br><br>DURAMIX CONCRETE CORPORATION, PERSONNEL COORDINATORS, INC., and PCI STAFF LEASING, INC.,<br><br>            Defendants. | **Hon. Dennis M. Cavanaugh**<br><br>**OPINION**<br><br>Civ. No. 11-4722 (DMC) (JAD) |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon the request of Plaintiff Trucking Employees of North Jersey Welfare Fund, Inc. (the "Pension Fund") that this Court issue an Order to Show Cause to compel Defendants Duramix Concrete Corporation ("Duramix"), Personnel Coordinators, Inc. ("PCI"), and PCI Staff Leasing, Inc., ("Staff Leasing") to remit delinquent interim withdrawal payments pursuant to ERISA and the Multi-Employer Pension Plan Amendment Act of 1980 ("MPPAA"). For the reasons stated below, Plaintiff's request for an Order is granted in part.

### I. BACKGROUND[1]

Defendants were allegedly signatories to a series of collective bargaining agreements that set

---

[1] The facts in the Background section have been taken from the parties' submissions.

forth the terms and conditions of employment for a group of Local 560 bargaining unit employees employed by Defendants. The agreements required Defendants to remit pension contributions to Plaintiff. On or about February 17, 2010, Defendants ceased to have an obligation to remit pension contributions because Duramix ceased operations. Thereafter, Plaintiff determined, in accordance with § 4203(a) of the MPAA, 29 U.S.C. § 1383(a), that Defendants had a "complete withdrawal" from the Pension Fund. As required by statute, Plaintiff calculated Defendants' share of the Pension Fund's unfunded vested liability.

The Pension Fund notified Dura-Mix/PCI Leasing by letter on May 19, 2010 of their obligation to remit withdrawal liability payments to it in the amount of $1,563,747.00. The letter also informed the Company of a schedule by which they were required to make monthly payments of $7,828.56 for a period of 240 months commencing on July 1, 2010. Final withdrawal liability calculations were subsequently completed that increased the amount of liability to $1,924,798.00. Defendants challenged both the assessment and the amount of assessment by submitting the matter to arbitration, as they were permitted to do under the MPPAA. The arbitration remains pending.

PCI has been submitting payment to Plaintiff since December 23, 2010. PCI has yet to submit the payments per Plaintiff's schedule. Instead, Plaintiff has had to issue a notice pursuant to 29 U.S.C. § 4219(c)(5) advising that interim payments have not been made for the quarter and that PCI has sixty days to remit payment. PCI then submits payments in the amount required. PCI is current with its payments through April 2011. It maintains that per Plaintiff's notice it has until September 13, 2011 to submit $23,485.68 to satisfy the interim payments and that it is therefore not in default. PCI disputes the liability of those payments and continues to dispute its liability as a separate entity from Duramix.

## II. RELEVANT LAW

The Third Circuit has found that "[t]he traditional four-prong test for garden-variety preliminary injunctions is not applicable in the [interim withdrawal liability] context." Galgay v. Beaver-Brook Coal Co., 105 F.3d 137, 140 (3d. 1997). As such, this Court's "jurisdiction is limited to ordering the employer to make interim payments once the pension fund has demonstrated that it complied with the statutory requirements for calculating liability and notifying the employer." Id. (citing 29 U.S.C. § 1382).

## III. DISCUSSION

Once an employer has been informed of withdrawal liability assessed by a pension fund, it must commence withdrawal liability payments within sixty days in accordance with the installment schedule provided by the pension fund. See Local 1478 Trucking & Allied Indus. Pension Fund v. Jayne, 778 F. Supp. 1289, 1302 (D.N.J. 1991) (citing 29 U.S.C. § 1399(c)(2) and § 1401(d)). The payments must be commenced within sixty days regardless of whether a review has been requested or arbitration proceedings initiated. 29 U.S.C. § 1399(c)(2) ("Withdrawal liability shall be payable in accordance with the schedule set forth by the plan sponsor under subsection (b)(1) beginning no later than 60 days after the date of the demand notwithstanding any request for review or appeal of determinations of the amount of such liability or of the schedule.").

Plaintiff argues that the MPPAA and ERISA dictate that it receive payments from Defendants and that the Court is essentially required to order that the payments be made, without any regard to whether Defendants are able to pay. The Court agrees. Defendants PCI and Duramix do not dispute that Plaintiff has assessed withdrawal liability and notified Defendants about their responsibilities.

Accordingly, this Court must order Duramix and PCI to make the payments regardless of their ability to pay.[2]  See Galgay, 105 F.3d at 141.

PCI does not dispute that MPPAA withdrawal liability is a "pay now, dispute later" system. Nonetheless, it maintains that the relief requested by the Pension Fund – a compelling of payment without the defined statutory grace period – would grant the Pension Fund more than Congress allowed in the statute.  Accordingly, PCI wants to be able to pay Plaintiff within sixty days after it receives notice from Plaintiff that it is in default of its obligations, as it has been PCI's practice thus far.

The parties dispute which statutory provisions should guide the timing of payments.  Plaintiff asserts that 29 U.S.C. § 1401(d) controls, which provides that: "If the employer fails to make timely payment in accordance with [the arbitrator's] final decision, the employer shall be treated as being delinquent in the making of a contribution required under the plan (within the meaning of section 1145 of this title)." Section 1145 states that: "Every employer who is obligated to make contributions to a multiemployer plan . . . under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement."  § 29 U.S.C. 1145.   Thus, Plaintiff's position is that PCI should be making payments once a month without first receiving a default notice.  PCI counters that 29 U.S.C. § 1399(c)(5) applies such that:

> In the event of a default, a plan sponsor may require immediate payment of the outstanding amount of an employer's withdrawal liability, plus accrued interest on the total outstanding liability from the due date of the first payment which was not timely made.  For purposes of this section, the term "default" means –

---

[2]Plaintiff agreed at oral argument to release Staff Leasing from this action.

>> (A) the failure of an employer to make, when due, any payment after this section, if the failure is not cured within 60 days after the employer receives written notification from the plan sponsor of such failure . . . .

29 U.S.C. § 1399(c)(5).

The Court finds Defendant's position to be more tenable. While Plaintiff can request payments via its established schedule, Defendants cannot be in default until sixty days after receiving a default notice. Accordingly, PCI may continue to comport with the procedure that the parties have been following to present and PCI will not be in default of its payments unless if fails to remit $23,485.68 to Plaintiff on or before September 13, 2011. PCI's Opp'n Br. 3.

## IV. CONCLUSION

For the reasons stated above, Plaintiff's request for an Order to Show Cause is granted in part.

  S/ Dennis M. Cavanaugh
Dennis M. Cavanaugh, U.S.D.J.

Date:     August  25 , 2011
Orig.:    Clerk
cc:       All Counsel of Record
          Hon. Joseph A. Dickson, U.S.M.J.
          File